```
                UNITED STATES DISTRICT COURT
                 MIDDLE DISTRICT OF FLORIDA
                       TAMPA DIVISION
```

REGINA BAKER,

    Plaintiff,

v.                                                  Case No.: 8:14-cv-3151-T-33TGW

ARTHUR S. PORTNOW, M.D.,
P.A., a Florida profit
corporation, d/b/a ARTHUR S.
PORTNOW, M.D., P.A.,

    Defendant.
_____/

## ORDER

This cause comes before the Court pursuant to Defendant Arthur S. Portnow, M.D., P.A.'s ("Portnow") Dispositive Motion for Summary Judgment or, Alternatively, Partial Summary Judgment (Doc. # 19), filed on April 28, 2015. Plaintiff Regina Baker filed a response in opposition to the Motion on May 21, 2015. (Doc. # 24). Thereafter, on June 4, 2015, Portnow filed a reply to Baker's response. (Doc. # 25). For the reasons that follow, Portnow's Motion is granted.

## I. Background

Portnow is a doctor's office located in Sarasota, Florida. (Doc. # 19 at 1; Doc. # 24 at 2). Portnow receives "Medicare and/or Medicaid" payments and employed fewer than 15 employees at all times relevant to this action. (Doc. # 21

at ¶ 3). Dr. Arthur S. Portnow ("Dr. Portnow") is the President and majority shareholder of Portnow. (Id. at ¶ 1).

Baker was born deaf and her primary language is American Sign Language ("ASL"), and written English is her second language. (Doc. # 21 at ¶ 4; Doc. # 24-1 at ¶¶ 1-3). Baker was a patient of Portnow beginning in approximately 2007. (Doc. # 21 at ¶ 2; Doc. # 24-1 at ¶ 6). For the first few years, Baker's husband would often, but not each time, accompany Baker to her appointments and interpret for her, as he was proficient in ASL. (Doc. # 21 at ¶ 5; Doc. # 24-1 at ¶ 7). A few times, someone other than Baker's husband would accompany Baker and interpret for her. (Doc. # 21 at ¶ 5). However, on a few occasions, Baker appeared alone for her appointments, and Dr. Portnow and Portnow staff communicated with Baker through the use of written notes. (Id.).

After Baker's husband passed away in 2009, Baker did not see Dr. Portnow until June 21, 2010. (Doc. # 21 at ¶ 7; Doc. # 24-1 at ¶¶ 8-9). From June 21, 2010, through 2013, Dr. Portnow communicated with Baker through the use of written notes during her appointments. (Doc. # 21 at ¶ 7). "Between February 2012 and November 2013, [Baker] attended approximately twenty (20) appointments with Dr. Portnow." (Doc. # 24-1 at ¶ 10).

"Due to ongoing concerns regarding [her] medical issues," Baker called to schedule her final appointment with Dr. Portnow, through a translation service. (Id. at ¶ 14). When she scheduled the appointment, Baker requested that an ASL interpreter be present at the appointment so that she could "fully communicate [her] medical needs and concerns with Dr. Portnow, and so [she] could have a complete understanding about [her] medical conditions. . . ." (Id. at ¶ 15). When she arrived at her appointment on November 14, 2013, Baker repeated her request for an ASL interpreter, at Portnow's expense, via a written note to the office receptionist. (Id. at ¶ 16; Doc. # 21 at ¶ 8).

Baker contends that her "limited understanding of written English is insufficient to fully communicate information regarding [her] medical conditions, test results, prescriptions, and future treatment options. Therefore, without an ASL interpreter [she] would not have the full benefit of the visit with Dr. Portnow." (Doc. # 24-1 at ¶ 25). By written note, Dr. Portnow declined to provide an ASL interpreter, contending that "accommodating that request would be burdensome," and instructed Baker to find another medical provider if she was going to require an interpreter. (Id. at ¶ 24; Doc. # 21 at ¶ 8).

3

Baker initiated this action on December 18, 2014, alleging a violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. (See Doc. # 1). In short, Baker alleges that Portnow discriminated against her when it refused "to provide her with a qualified [ASL] interpreter . . . during a scheduled office visit, despite the fact that an [i]nterpreter was necessary for effective communication, and despite the fact that an [i]nterpreter was explicitly requested when the appointment was scheduled." (Doc. # 24 at 1-2). Portnow filed the present Motion on April 28, 2015 (Doc. # 19), which is ripe for the Court's review. (See Doc. ## 24-25).

## II. Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving

party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (citing Celotex, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one

inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment. <u>Samples ex rel. Samples v. City of Atlanta</u>, 846 F.2d 1328, 1330 (11th Cir. 1988) (citing <u>Augusta Iron & Steel Works, Inc. v. Emp'rs Ins. of Wausau</u>, 835 F.2d 855, 856 (11th Cir. 1988)). However, if the non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required. <u>Morris v. Ross</u>, 663 F.2d 1032, 1034 (11th Cir. 1981), <u>cert. denied</u>, 456 U.S. 1010 (1982).

### III. **Analysis**

Baker brings her claim under Section 504 of the Rehabilitation Act, which provides in relevant part that:

> No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. . . .

29 U.S.C. § 794 (a). Program or activity is defined, amongst other terms, as a: "private organization . . . which is principally engaged in the business of providing . . . health care. . . ." <u>Id.</u> at (b)(3)(A)(ii). It is undisputed that at all material times, Portnow was a health care provider that received Medicare and/or Medicaid payments, and therefore was

6

bound to adhere to the mandates of the Rehabilitation Act. (Doc. # 21 at ¶ 3).

The implementing regulations under the Rehabilitation Act relating to health care providers are promulgated by the Department of Health & Human Services ("HHS") and such regulations are set forth in 45 C.F.R. § 84.1, *et seq*. These regulations are recognized "as an important source of guidance on the meaning of [Section] 504." Alexander v. Choate, 469 U.S. 287, 304 n.24 (1984). One regulation states in part that "[i]n providing health, welfare, or other social services or benefits, a recipient may not, on the basis of handicap . . . [d]eny a qualified handicapped person these benefits or services." 45 C.F.R. § 84.52(a)(1). Additionally, a regulation addresses a provision of "auxiliary aids" to disabled persons, stating:

> (1) A recipient to which this subpart applies that **employs fifteen or more persons shall provide appropriate auxiliary aids** to persons with impaired sensory, manual, or speaking skills, where necessary to afford such persons an equal opportunity to benefit from the service in question.
>
> (2) The Director **may require recipients with fewer than fifteen employees to provide auxiliary aids where the provision of aids would not significantly impair the ability of the recipient to provide its benefits and services.**

7

> (3) For the purpose of this paragraph, auxiliary aids may include brailled and taped material, interpreters, and other aids for persons with impaired hearing or vision.

45 C.F.R. § 84.52(d)(1) (emphasis added); <u>Nash v. Medina</u>, No. 6:09-CV-382, 2010 WL 3123083, at *3 (M.D. Fla. Aug. 9, 2010)("If Defendant employed fewer than fifteen employees, the regulation does not state [that] an interpreter is the required auxiliary aid in all circumstances.").

Commentary in Appendix A to Part 84 reiterates that a "small provider" of clinical services is not obligated under the Rehabilitation Act to provide auxiliary aids, unless directed to do so by the HHS Director:

> Section 84.52(d), also a new provision, requires recipients with fifteen or more employees to provide appropriate auxiliary aids for persons with impaired sensory, manual, or speaking skills. Further, the Director may require a small provider to furnish auxiliary aids where the provision of aids would not adversely affect the ability of the recipient to provide its health benefits or service. Thus although a small nonprofit neighborhood clinic might not be obligated to have available an interpreter for deaf persons, the Director may require provision of such aids as may be reasonably available to ensure that qualified handicapped persons are not denied appropriate benefits or services because of their handicaps.

45 C.F.R. § Pt. 84, App. A.

As authorized by section 84.52(d)(2), the HHS, through its Director of the Office of Civil Rights ("OCR"), announced

in a Notice dated December 6, 2000 ("Notice"), that, effective immediately:

> The Office for Civil Rights (OCR) will require recipients with fewer than 15 employees to provide auxiliary aids where the provision of aids would not significantly impair the ability of the recipient to provide its benefits or services, and will investigate complaints against health and social services providers with fewer than 15 employees for failure to provide auxiliary aids to individuals with disabilities under Section 504.

See Office for Civil Rights; Section 504 of the Rehabilitation Act of 1973; Notice of Exercise of Authority Under 45 CFR 84.52(d)(2) Regarding Recipients With Fewer Than Fifteen Employees, 65 FR 79368-03.

The Notice explains that "in the interest of uniformity and consistent administration of law, Section 504's auxiliary aids requirement should be applied to covered entities with fewer than 15 employees, as is the case under the Americans with Disabilities Act of 1990." Id. It also explains that OCR would enforce Section 504 with "thorough procedures provided for in the Section 504 regulations." Id.

It is undisputed that at all material times, Portnow did not employ more than 15 individuals. (Doc. # 21 at ¶ 3). However, Baker contends that, regardless, Portnow was required to provide the requested auxiliary aid – an ASL

9

interpreter – to assist Baker with her medical appointment. (See Doc. # 24). Thus, as Portnow failed to provide an ASL interpreter, Baker asserts that she has a private cause of action against Portnow. (See Doc. # 1).

According to Baker, it is well established that a private cause of action exists under the Rehabilitation Act. (Doc. # 24 at 7)(citing Barnes v. Gorman, 536 U.S. 181 (2002)). Thus, Baker suggests that her alleged private cause of action exists "simply because the claim arises under a regulation promulgated pursuant to Section 504 of the Rehabilitation act." (Id. at 8). Namely, Baker asserts that the "Notice falls within the scope of the statute because it simply ensures that qualified individuals with disabilities are not excluded from or denied benefits or discriminated against solely by reason of the disability, by recipients of federal financial assistance." (Id.).

However, Portnow contends that no private cause of action "exists as the OCR has expressly retained power to enforce the expanded obligations in Section 504." (See Doc. # 19). Accordingly, Portnow posits that Baker's remedy is "limited to filing of a complaint with the appropriate executive agency." (Id. at 6).

10

Thus, the issue before this Court is whether the Notice, which provides expanded obligations upon recipients that employ 15 or fewer individuals, provides Baker with a private right of action. For the reasons set forth below, the Court agrees with Portnow that no such private cause of action – express or implied - exists. (See Doc. # 19).

Upon review, the Court concludes that "Section 504 is a broad statutory prohibition against discrimination, while the Notice is a limited exercise of executive discretion to provide administrative remedies for expanded administrative requirements." (See Doc. # 25 at 8).

The procedures for enforcement of the expanded requirements of Section 504 are explained in the "Supplementary Information" of the Notice. 65 FR 79368-03. The "Supplementary Information" explains that that OCR:

> [W]ill investigate complaints against health . . . providers with fewer than 15 employees for failure to provide auxiliary aids to individuals with disabilities under Section 504. Determinations of whether the provision of an auxiliary aid or service would impose an undue burden on a small provider will be made on a **case by case basis**.
>
> * * *
>
> OCR will enforce Section 504 as it applies to recipients' responsibilities **under the [Notice] through procedures provided for in the Section 504 regulations.**

11

Id. (emphasis added).

The Notice further provides a list of the procedures available to the OCR in its enforcement of these expanded requirements, which include, but are not limited to: "complaint investigations, compliance reviews, efforts to secure voluntary compliance and technical assistance." Id.

The Notice concludes by assuring those affected by the expanded obligations that:

> OCR will always provide recipients with a complete opportunity to come into voluntary compliance with Section 504 prior to initiating formal enforcement proceedings, and will provide technical assistance to help entities resolve complaints in a collaborative fashion with OCR.

Id.

Therefore, as stated by Portnow, "while Section 504's prohibition against discrimination does apply to Recipients with fewer than 15 employees, the provision of auxiliary aids is not a requirement of Section 504." (Doc. # 19 at 14). Rather, Portnow provides that "it is, instead, a requirement of the 504 Regulations promulgated in accordance therewith; specifically 45 C.F.R. § 84.52(d)." (Id.).

Upon review of the procedures provided for in the Notice, the Court determines that no private cause of action is afforded to Baker under the circumstances set forth in the

Complaint. In the Notice, the HHS expressly provides that the OCR will enforce Section 504 by investigating the complaints against recipients on a case by case basis. See 65 FR 79368-03. Thus, the HHS has reserved enforcement of these matters (i.e., use of auxiliary aids) as only the OCR can enforce the obligations under the Notice and determine, on a case by case basis, whether application of the requirements "would impose an undue burden" to a recipient who employs fewer than 15 individuals. Therefore, there is no express private cause of action for Baker, under the present circumstances. "Such a conclusion is strictly in accord with the legal prohibition against private enforcement of expanded regulatory requirements." Columbia v. Gregory, 2008 WL 4192437 *4 (D.N.H. 2008)(citing Alexader v. Sandoval, 532 U.S. 275 (2011)(a regulation is not privately enforceable if it imposes an obligation beyond what the statute mandates).

However, Baker suggests that "[e]ven if, arguendo, the Notice is the basis of the private cause of action, the Notice should be interpreted *in pari materia*[1] with [Section 504],

---

[1] The rule of *in pari materia* requires that all statutes relating to the same subject-matter . . . be read, construed, and applied together, and harmonized wherever possible, so as to ascertain the legislative intent and give effect thereto. In re Graupner, 356 B.R. 907, 918 (Bankr. M.D. Ga. 2006) aff'd sub nom. Graupner v. Nuvell Credit Corp., No. 4:07-CV-37CDL,

and not as a separate rulemaking." (Doc. # 24 at 9). According to Baker, "Congress passed the Rehabilitation Act to, *inter alia*, empower agencies to promulgate regulations to prevent the disabled, solely by reason of their disability, to be denied participation in, the benefit of, or be discriminated by any program receiving federal financial assistance." (Id.); see 29 U.S.C. § 794(a).

Baker argues that the HHS, in turn, "promulgated agency regulations requiring, amongst other things, the provision of auxiliary aid by recipients of federal financial assistance with 15 or more employees, and expressly left open the possibility for possible extension of the regulation to those recipients with fewer than 15 employees at a later date." (Id. at 9-10); see 45 C.F.R. § 84.52(d). To that end, Baker provides that "Despite being on notice that [c]ourts have interpreted Section 504 of the Rehabilitation Act to provide a private cause of action, HHS did not expressly preclude this exercise of authority from providing a private cause of action." (Id. at 10). Therefore, Baker requests that the

---

2007 WL 1858291 (M.D. Ga. June 26, 2007) aff'd sub nom. In re Graupner, 537 F.3d 1295 (11th Cir. 2008).

14

Notice be read *in pari materia* with Section 504, providing Baker with a private cause of action. (Id.).

The Supreme Court has admonished that "implying a private a right of action on the basis of congressional silence is a hazardous enterprise, at best." Touche Ross & Co. v. Redington, 442 U.S. 560, 576 (1979) (citation omitted). While the Notice expanded Section 504's requirement regarding auxiliary aids to encompass those recipients that employ 15 or fewer individuals, the Notice did not expressly provide for a private cause of action. Rather, the Notice indicates that the OCR "will investigate complaints against [recipients] with fewer than 15 employees for failure to provide auxiliary aids to individuals with disabilities under Section 504 . . . on a case by case basis." 65 FR 79368-03.

**IV. Conclusion**

Portnow does not employ 15 or more individuals. Therefore, Portnow is not bound to the auxiliary aid regulations set forth in Section 504. Rather, Portnow "may" be required to provide Baker an auxiliary aid if the OCR determines that doing so would "not significantly impair the ability of [Portnow] to provide its benefits or

15

services. . . ." See 45 C.F.R. § 84.52(d)(1). OCR has made no such determination at this juncture.

According to the Notice, which imposed auxiliary aid obligations on those recipients with fewer than 15 employees, if Portnow's accommodation of exchanging written notes with Baker at her medical appointment fails to comply with the Notice, Baker's remedy is to file a complaint with the OCR, at which time the OCR will investigate Baker's complaint in accordance with the procedures enumerated in Section 504. For the reasons set forth above, the Court grants Portnow's Motion.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendant Arthur S. Portnow, M.D., P.A.'s Dispositive Motion for Summary Judgment or, Alternatively, Partial Summary Judgment (Doc. # 19) is **GRANTED.**

(2) The Clerk is directed to enter judgment in favor of Defendant and **CLOSE THIS CASE**.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 21st day of July, 2015.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:  All Counsel of Record